Are you ready to proceed? Yes, Your Honor. You may. May it please the Court, Edward Kenney for United States with my co-counsel Jason Kenner. Your Honor, I'd just like to apologize for, there are a few instances in our brief where we cited to the deposition transcript contained in the joint appendix as opposed to the actual joint appendix page. You made me read the entire deposition. But I did. I found the right pages. Thank you. I'm sorry for that, Your Honor. The trial court committed a reversible error in this case when they failed to properly analyze the work done to the entry and top four feet of cell guides, in this case, the work that was done in Lisnev, Portugal in 2002. But they had records, business records, showing that there was no damage to those, that they were just being modified. There were some rails that were damaged. They paid the duty on those because they were repairing them. But then the ones there were no records of damage, why would they have done anything other than modify those? Your Honor, there is no proof. There was a discussion of a business practice. But at the end of the trial, and the judge took it for what it was worth, at the end of the trial, it does not amount to a proof of that when the vessel came in to Portugal in 2002, that the cell and entry guides in holes five, six, and seven were in good order. Because it does not, there was also from the same witness. But isn't there enough here for the trial court to rely on? There were no records of damage. And there were records of damage in the case of the other access chutes. Well, Your Honor, the party with the burden of proof in this case was Verizon Lines. My point is they came forth with evidence. Why isn't it enough? Your Honor, the evidence is the only, they had no, the only evidence they had was the so-called business practice. At the end of the day, the business practice is rebutted. The proof of that practice shows that there's not similar circumstances or similar instances, there's not a similar response to a certain situation in this case. The business practice that they were trying to show was a practice that there was damage and that damage is fixed within the next court call. There were many instances, and specifically, where they described that so-called practice. And Mr. Cale, another of the witnesses that appeared by deposition in the trial, a port engineer for Verizon, described that situation. And you can see from his testimony that there is not such a system, such a habitual response of repairing damage. Now, Mr. Kenney, when you have better technology, and in this case, there's proof that they have improved features. They were using thicker rails and they extended those rails by six inches or so on each side, and this is an improvement over the prior technology. Why wouldn't that be a modification rather than a repair? When you're improving your technology, isn't that kind of by definition a modification? Your Honor, what has to be analyzed is the repair statute. There's only one statute that's at issue here, and that is the repair statute. And if you look at its expenses of repairs that are duty, they're duty at 50%. This is a protectionist statute to protect the American shipyard industry. This court, the predecessor court, the Customs and Patent Appeals Court, in the case E.E. Kelly in 1929, defined what is a repair in this case, or defined what is a repair under the statute. And it says, repair is the process of repairing, restoration after decay, waste, injury. It also includes to mend, add to, make over. It also includes... That was the Shanghai painting case, right? Yes, Your Honor, but it's talking about... That's pretty clear that you're repainting something which had worn away, but in this case, let's assume it's new technology. It's something that hadn't been done before. Thicker steel, extensions on each end. When you have a circumstance like that, is that not evidence of modification? Your Honor, that shows that it's fixing the problem. Mr. Cianci talked about why this was necessary. It was necessary because there were recurring instances of fractures in this entry guide and in the top four feet of the cell guide. Are you saying that a lot of modification is partly repair? I am saying... And that there's a spectrum? Your Honor, what I'm saying is that there's a lot of work that is done that is repair. You can prove something... Even in a modification? If something reaches the level of modification, where if it needs to be repaired, it's a repair. If it's in good condition and it's not imperfect, it's in sound condition, then you can add to it or make a change and that would be a modification. Do I understand the government's position right that suppose that you were scheduled to put in hardwood floors and rip out your carpets? If your carpets were perfectly fine, that would be a modification. But if your carpets were damaged and had to have been replaced anyway, the fact that you upgraded with something better doesn't suddenly make it a modification. It's just a repair? It's still a dutiful repair according to the repair statute, Your Honor. Okay, now a broader question. I realize this is not really your battle, but I don't understand this whole modification concept at all. It seems strange to me. If somebody buys a new boat and brings it over to the U.S., we tax them. If somebody repairs their existing boat, brings it over to the U.S., we tax them. But if they go out and modify it with upgrades, we don't tax them? This is just a matter of big picture policy. I don't get it. I know you're bound by it. You're stuck with that CCPA swimming pool case and there's nothing you can do about it. But I just don't, as a matter of policy, appreciate or understand why it's like that. Well, Your Honor, the precedent that was set with the E.E. Kelly case defining what is a repair gave us the scope of everything that is repair. Everything else is non-dutiful. And when you're saying, you could call it what you will, it's just non-dutiful. It's just not a repair. So it's bound by the terms of the statute and how that's been defined by the... What you're saying is Congress's choice, right? Yes. Okay. Now, in this case, one of the questions I have for you is, why is this a modification or would it be a modification even if, or would it, in your case, be a repair, even if there was nothing wrong with this? And suppose that every one of the three modified or altered things had been inspected and they were shown to have no damage. Would you then agree that this is a modification? Yes, I would. A non-dutiful modification. And I'm assuming you're also saying there was no history, there was no recurring fracturing and all that. Everything was in fine condition and they added to it. Customers would not have a problem saying that's just not a repair. Suppose I have a big computer system that's part of this ship and I am troubled because it never has enough memory. I have to keep deleting stuff. It's always insufficient. There's nothing wrong with it. It operates exactly as it did the day I bought it. It doesn't need to be repaired. It's just frustrating to me because it's inadequate to meet my current needs. If I go into port in Portugal and have them totally modify my computer system to have more memory and therefore be able to accommodate my needs better, would that be a dutiable repair or would that be a modification? Now, keep in mind, I would refer to that old system as problematic because it constantly forced me because of its lack of capacity to not be able to do everything I wanted it to do. But there was nothing actually wrong with it. It worked the same it did the day I bought it. What about that situation? What's that? That would be a non-dutiable modification. As you said, it's acting just like when you bought it. It is just as good. That's not the case in this instance. Why? What evidence is there that that's not the case in this one? Because I understand your point about there isn't evidence on the record that it wasn't broken. A couple of double negatives there, but I think you follow me. Yes, I do. But what is the evidence that this was so problematic and constantly breaking down such that this was one of these long-term problems that had to be replaced? Your Honor, there was specifically when the containers are loaded down into the cell entry guides, they bounce on top of these cell entry guides and they cause… Dings and dents and stuff? Dings, dents. They don't line up right? Right. And especially with these cell entry guides, there's a well between the entry guide and the top four feet, and that fractures. I guess here's my question for you. Are those dings and dents the result of the way this system was designed, sort of like the shortcoming in my small memory computer example? Or was the product, or did it become at some point defective? Do they just have a better design now that works better, or was the thing failing and in constant need of repair, meaning when those dings and dents were occurring, it was because the system wasn't functioning the way it was the day they bought it? Do you understand my distinction? I'm sorry to be so wordy. Yes, I do, Your Honor. I don't think the two situations are the same, because if you have a weak… The cell guide, the cell guide structure, if you're lowering these 30-ton containers down onto the top of this particular design, apparently they fracture, they're prone to fracturing. That's, it was designed to let this happen. It was designed in a manner that it's supposed to be able to load containers functioning, or load containers properly. And this is an old chip. So I guess, is it a poor design, or was these particular three defective? That's what I'm trying to get to the heart of. Was it a poor design that was causing it not to work right, or were these three defective? Well, it's likely a combination of both. And it's not, it's, there's another case that's a sealant service case that talks about warranty issues. If you have, if you have a piece of equipment on the ship, and because of some sort of a defect in materials or workmanship, it needs to be repaired. That is a repair. The courts did say, or the CIT did say that if it's within a 12-month warranty, it would be a non-dutiful warranty item. But the court said in that sealant service case that if it goes beyond the 12-month period, you can't call something that's two years down the road that's a defect in workmanship something other than a repair. And that case directly addressed that particular issue. But in this case, not only are there, were the cell guides, the existing cell guides prone to fracturing, but there was no evidence. There was inspections done in every other hold on the ship, 2, 3, 4, 8, 9, 10, and there was damage and repairs done, dutable repairs in those. There was just no inspection of the entry guides and the top of the cell guides in this case because they say that they were going to take them out and replace them. But still they had to, if there were repairs that were dutable repairs in every other one, and they're subject to the same rigors of bloating, it stands to reason that they would be the same conditions in 5, 6, and 7. Mr. McKinney, do you want to save your rebuttal time? Yes, Your Honor. Thank you. Ms. Suarez. Good afternoon, Your Honor. May it please the Court. My name is Evelyn Suarez. I'm here together with co-counsel George Bowles, representing Horizon Lines. We are here and we submit to the Court that the trial court was correct in its decision. It correctly interpreted the vessel repair statute 19 U.S.C. 1466 in finding that the work met the criteria for constituting a modification and that the work was not a repair. Ms. Suarez, I think it's factual finding 10 or something where Judge Wallach says because this was an upgrade in technology, it is per se a modification. I think he says it's irrelevant, the prior status, whether it was damaged or not. Can that properly be the standard? Is it ever irrelevant? The prior condition of the refurbished, shall we say, entity? Your Honor, we agree with Judge Wallach that it is irrelevant to the determination of whether the work is a modification. It is relevant to whether there is a repair because there has to be disrepair for there to be a repair. What we have here is a new design. Horizon Lines commissioned a naval architect and marine engineer to commission drawings which created this new design which had a funnel-shaped top to receive the containers so that the crane operator could have a better target. It also provided beefier materials in the form of brackets and the thickness of steel. They all reflected a new design that provided improvements. And the reduction of the propensity for... But if I was repairing damaged goods that are clearly inoperable, they're broken, and I repair them with this new technology, that wouldn't make it a modification, would it? It seems to me, and by the way, I think it's conclusion of Law 10, not finding of Fact 10, but that seems to be what Judge Wallach is saying, is once it's a newer technology, the prior status of the refurbished article becomes irrelevant. And that can't be correct, can it? I think it can be correct because Horizon Lines had a choice. So I've got a broken cell guide. It's inoperable. As long as I use an upgrade in technology, it's not a repair. Your Honor, in fact, Horizon Lines did repair some of their cell entry... I understand that's the facts of this case. I'm dealing with the language used by Judge Wallach, and I want to see if that is the kind of language that you would have us include as a guideline for the future of this law. Your Honor, I think the considerations that Customs has used has been these criteria, which sheds light on whether you have a modification. Two of them come from Admiral Oriental, and the following two have to do with a new design that provide improvements. That is to be distinguished, and I think it's mutually exclusive from repair, which looks backwards. It looks back to the old design and puts it back to that condition. But if you are repairing something that is broken and inoperable, does it matter that you're using an upgrade in technology to repair? It still is a repair, isn't it? I know what you're getting at. I think you could use better materials. I don't think this is a matter of this is a way to get around the vessel repair statute. Instead, I know that the company had a choice, and it had a program of making these modifications. It didn't do it all the time. It did it when it had the budget to do it. Otherwise, whether it was a repair that was necessary, it repaired. But in fact, it had this practice of keeping these cells, these cell entry guides and the cells operational because their job is to carry cargo. So when they have a cell that's voided, they cannot carry cargo. That is the basis for the routine practice, which makes sense because they cannot afford to leave cargo behind. As Mr. Cianci said, if your job is to carry water in a bucket, if you have a hole in the bucket, you repair it. So they constantly repaired. Now, there were some repairs to the other cell entry guides, but we don't know if it had to do with the cargo carrying capacity. It could be dings. We also have testimony from the port engineer that you take the opportunity when the ship is in dry dock to make these types of repairs. But they reported the work that were repairs, where you were bringing the item back to the condition as repairs. For these, this was part of their program of modifying the vessel to provide a new design that not only reduced the possibilities of damage, but also to speed container loading, made it easier. And that was very important in today's environment. 20, 25 years ago, that wasn't very important. Today in terminals, you have to load containers very quickly. The other thing is that it made it safer because the containers could jam in the cells and therefore it presented a rather dangerous situation. So they embarked on this program of updating their cell entry guides. But there was a routine practice of maintaining the cell entry guides, and we would submit that that was shown to the court. Evidence was presented in the form of Mr. Cianci's testimony, Mr. Call's testimony. Even the memoranda that the two pirate engineers wrote indicated that they frequently rehabilitated. They fixed damage to the cell entry. So what is your best evidence of modification here? That it was a new design. They commissioned drawings for a new design. It was permanently incorporated. It would extend aboard the ship. It was a new design as evidenced by the drawings, and it provided improvements. The improvements being increasing the speed and ease of container loading, increasing the safety, and also reducing the amount of damage. That obviously is important to the company because they want to carry cargo, but it also saves them money. I mean, it was a sensible business measure to take. Your Honor, we would submit that the court correctly interpreted the statute in terms of what's a repair and making a distinction. Repair is bringing something back to its former condition. Modification, providing a new design with improvements. Take the Kelly case where you're repainting your ship in Shanghai. What if there's an upgrade in paint that makes it more resistant to rust? Is the fact that my ship needs repainting and it's wearing very quickly, is that relevant at all to the fact that I'm using new paint? As long as I'm using new paint, do I get to claim modification? Your Honor, again, this is, I think, a case-by-case analysis. As Customs says, the factors are illuminating, illustrative. They're not necessarily determinative. Here we had a new design. So with case-by-cases, then there's no standard for anybody to know what to do in the future. They're just guessing. And the only way they can get an answer is to come here to court. That's not very good law, is it? True. But there are criteria, and the criteria are the modification factors. And in this case, the work did meet those criteria, which was a new design. I don't know that improved paint would necessarily provide a new design. I don't know that it would. Maybe it provided improvements. That's a matter of degree. But if it needed paint, it would be a repair. Right. Even if an improved paint was applied. Right. That's a simple answer, isn't it? If it needed paint, even if an improved paint was applied, it would be a repair. If it was paint? If it needed paint. Correct. Because it was in a deteriorated state, and you were bringing it back. You're bringing it to the condition it was before. So that's a repair. That would be a repair. You're right. As opposed to here, where it is an improvement, but it's a new design, and you're not bringing it back. And you could have brought it back. You have a choice. Whereas there, you're right. You have to maintain. So you're bringing it back to a good condition. Here, you're bringing it. In either case, whether it's a repair or modification, the end result would be a good condition. In other words, your argument isn't a modification. My argument is not a modification. The good condition, at the end of the day. He does that to us, too, all the time. In the end of the day, you're going to do work that's going to result in good condition. But good condition, as we said, it is relevant to repair, but not necessarily to modification. Because you do have a choice. Bring it back, or do something new and different. I would say they're mutually exclusive. That the modifications are something different than a repair. And you did pay duty on the damaged cell guides, right? Even though you modified them with the new technology. No, there were different cell guides that we did repairs, and we paid duties on that work. But you used the upgraded, thicker, longer cell guide steel, right? No. You brought it back to the same? Right. In some cases, they have a program of implementing these modifications, but they didn't do it all at once. Instead, if there were repairs done to other cells, they chose how many they could do, because they had a budget for just so many. So they had a choice. They could go repair it, or they could modify it. But in this case, they were going through this program. We're going to do three. We're going to do three cell entry guides. We're going to do three, and we're going to modify them this time. In fact, they later, in 2005, when Mr. Call was the engineer in charge of the dry docking, he was doing other cell entry guides, modifying other cell entry guides, because they had a budget for that for the same ship. Right. Good. Thank you. Okay. Thank you. Thank you. Thank you, Your Honor. Mr. Kenney, you have two minutes. Yes, Your Honor. In this case, they chose not to look at the cell and entry guides in 5, 6, and 7 hull. They didn't want to know the condition of that cell and entry guide. Well, but no, the court went on to make a fact-finding that said that they were not deleterious. They were not in any state of disrepair. The court made that. Even though I agree the court did state it didn't have to look, it nonetheless went in and made an alternative fact-finding anyway. And the only way that that was done was through the asserted business practice. But Mr. Cianci, who was the person who testified about this business practice, said that there were no open things. Things are reported and things are fixed, and they're fixed right at the next port. But if that was the case, the ship wouldn't have come into Lisnev with repair items for the cell and entry guides in all the other hulls, 2, 3, 4, 8, 9, and 10. It's rebutted by his own admission, and that's at JA 2. They weren't repairs that prohibited the things from working. They were repairs, you know, we need to tighten some things up, we need to fix some things, but they were still operable, right? Am I wrong from a factual standpoint? Yes, Your Honor, because they have a specification for typical repair items where they're renewing. And they're renewing it and they're saying the top five feet of the cell entry guides is where this damage usually occurs. And you can find that at 564, JA 564. I'm not following the answer to my question. It's probably because my question wasn't very clear. Is the ones that they repaired that are admitted by everyone to have been repaired, not modified, those particular cell entry guides were still operable, weren't they, when they pulled into port? The repairs were smaller scale? That's my question. There was no evidence at this trial about the cargo carrying capacity of the ship, whether everything was able to be carried. It was tried to get in by Captain Gimbel, but that was kept out, so there was no evidence of that. And that's why they were saying there's a failure of proof. In this case, the only thing that was to be analyzed was the repair statute. There's no protection for anything else but repairs. Thank you, Your Honor. And we would ask that the trial court be reversed. Thank you, Mr. Kenney.